**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| LYNN OSBORNE, ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 4:19-cv-02379 SRC |
| ) | |
| ANDREW M. SAUL, ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant(s). ) | |

**Memorandum and Order**

This matter comes before the Court on Plaintiff Lynn Osborne's request for judicial review, under 42 U.S.C. § 405(g), of the final decision of the Commissioner of Social Security denying Osborne's application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*. The Court affirms the Commissioner's decision.

**I.  Procedural History**

Osborne filed her application for benefits on October 26, 2016. Tr. 182. The Social Security Administration initially denied her application on November 23, 2016. Tr. 114-118. Osborne asked for a hearing before an ALJ on January 4, 2017, and the ALJ held a hearing on July 19, 2018. Tr. 76, 121. The ALJ denied Osborne's application in a decision dated October 29, 2018. Tr. 62-71. On June 24, 2019, the Appeals Council denied Osborne's request for review. Tr. 1-3. As such, the ALJ's decision stands as the final decision of the Commissioner.

**II.  Decision of the ALJ and Appeals Council's Denial of Review**

The ALJ determined that Osborne has not engaged in substantial gainful activity from her alleged onset date of January 31, 2010, through June 30, 2012, known as the date last insured,

which is the final day of the last quarter she met insured status for disability.  Tr. 67.  The ALJ found Osborne has medically determinable impairments of degenerative disc disease, hypothyroidism, osteopenia, and bipolar disorder.  Tr. 67.  However, the ALJ determined Osborne's impairments did not significantly limit her ability to perform basic work-related activities for 12 consecutive months; therefore, Osborne did not have a severe impairment or combination of impairments.  Tr. 67.  The ALJ concluded that Osborne was not under a disability at any time from January 31, 2010, through June 30, 2012.  Tr. 70.

Osborne filed a Request for Review of Hearing Decision with the Appeals Council. Tr. 178-81. While the request was pending, she submitted new evidence to Appeals Council that she did not present to the ALJ. Tr. 7-61. The Appeals Council considered the new evidence in denying review. Tr. 1-2. It determined that the evidence either did "not show a reasonable probability that it would change the outcome of the decision" or did "not relate to the period at issue." Tr. 2. Osborne appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

**III.    Legal Standard**

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]"  *Id.* at § 1382c(a)(3)(B).

2

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. § 416.920(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether "the claimant has a severe impairment [that] significantly limits [the] claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011); *see also* 20 C.F.R. § 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative

3

assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3) (emphasis added). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 574 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary

4

sufficiency is not high." *Id*. Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

**IV.**     **Discussion**

Osborne argues that the additional evidence submitted to the Appeals Council undercuts the ALJ's findings such that substantial evidence no longer supports the decision. The Court disagrees.

"When the Appeals Council has considered material new evidence and nonetheless declined review, the ALJ's decision becomes the final action of the Secretary." *Mackey v. Shalala*, 47 F.3d 951, 953 (8th Cir. 1995). In such a situation, the Court's task is to "decide whether the ALJ's decision is supported by substantial record as a whole, including the new evidence deemed material by the Appeals Council that was not before the ALJ." *Id*. "[T]hat means that we must speculate to some extent on how the administrative law judge would have weighed the newly submitted reports if they had been available for the original hearing." *Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir. 1994).

**A.**     Additional Evidence Submitted to the Appeals Council

The additional evidence Osborne submitted to the Appeals Council consists of medical records documenting her visits with Dr. Luis A. Giuffra between 2003 and 2012, as well as three

5

visits in 2018. These documents reflect Dr. Giuffra's diagnosis of Osborne's mental state and her prescribed medication after each visit. With the relevant period being January 31, 2010 to June 30, 2012, this Court addresses the submitted evidence in three categories—before, during, and after the relevant period.

The records dated before the start of the relevant period show that Osborne was diagnosed with depression during many visits between 2003 and 2005. Tr. 37-56. However, most other records pre-dating January 31, 2010 show that Osborne possessed a normal mental state. Over the course of seventeen visits between August 10, 2005 and September 14, 2009, Dr. Giuffra concluded that Osborne's mental state was normal fifteen times. Tr. 20-36. Osborne was diagnosed with "mild" dysthymia[1] during the other two visits. Tr. 20, 31.

Shifting to the medical records during the relevant period, these show that Osborne experienced a two-month depressive episode beginning in July 2010. Osborne had six visits with Dr. Giuffra between July 28, 2010 and September 23, 2010 to treat her depression, during which he adjusted her medication. Tr. 13-18. Shortly thereafter, Osborne's mental state returned to normal. Dr. Giuffra's notes from a November 8, 2010 visit reflect that Osborne was DVW ("doing very well") and had a normal mental state. Tr. 12. Dr. Giuffra further found that Osborne possessed a normal mental state during her other visits during the relevant period. Tr. 8, 10-11, 285-87. In sum, during the relevant period of January 31, 2010 through June 30, 2012, Dr. Giuffra's medical records indicate that Osborne's mental state degraded for a period of about two months before returning to normal.

---

[1] Dysthymia is "a mood disorder characterized by chronic mildly depressed or irritable mood often accompanied by other symptoms (such as eating and sleeping disturbances, fatigue, and poor self-esteem)." *Dysthymia,* Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/dysthymia (last visited Septeber 29, 2020).

6

Osborne also submitted records from her visits with Dr. Giuffra in 2018. Tr. 59-61. These records appear to show Osborne had a normal mental state. *Id*. However, as further discussed below, medical records addressing Osborne's mental state after the relevant period have no bearing on the Court's review.

**B.** Additional Evidence Submitted to the Appeals Council

Osborne rightly argues that the additional evidence undercuts certain portions of the ALJ's decision. For example, the ALJ stated that "[t]here were no hospitalizations, referrals for intensive outpatient treatment, or even escalated frequency of psychiatric care during the relevant time period." Tr. 69. But the additional evidence does show that between July and September 2010, Osborne did undergo an escalated frequency of psychiatric care and was in fact referred to outpatient treatment (which was refused). Tr. 16-18. These records also undercut the ALJ's statement that "the treatment records did not document any episodes of mania or depression during the relevant time period." Tr. 70. Thus, the new evidence does serve to support Osborne's claim.

However, even with the additional medical records, substantial evidence supports the ALJ's finding that Osborne did not have a severe impairment and therefore was not disabled. Two main reasons support this conclusion.

First, substantial evidence supports the ALJ's finding that Osborne "did not have a severe impairment" for a continuous period of twelve months during the relevant period, as required under 42 U.S.C. § 423(d)(1)(A). Tr. 67; *see also* 20 C.F.R. § 404.1509 (explaining that the "duration requirement" necessitates impairments to "have lasted or must be expected to last for a continuous period of at least 12 months"). By Osborne's own admission, the only period of depression that Osborne experienced during the relevant time period occurred between July 28,

7

2010 and September 23, 2010—roughly two months out of thirty. Pl.'s Br. at 7. The other medical records during the relevant period show Osborne's mental state as normal. Tr. 8, 10-11, 285-87. Moreover, the records before 2010 also largely reflect a normal mental state. As stated above, in seventeen visits between August 10, 2005 and September 14, 2009, with two exceptions, Dr. Giuffra concluded that Osborne's mental state was normal. Tr. 20-36. Thus, the medical records reflect that between 2005 and June 2012, Osborne had a single depressive episode requiring intensive treatment. Given that Osborne experienced a depressive episode for only a short period of time, substantial evidence supports a finding that she did not have a severe impairment and, consequentially, not disabled. *See* 20 C.F.R. § 404.1520(c).

Turning to the second reason, the medical records support the conclusion that treatment and medications can control Osborne's mental state. The Eighth Circuit has repeatedly stated that "[i]f an impairment can be controlled by treatment or medication, it cannot be considered disabling." *Wildman v. Astrue*, 596 F.3d 959, 965 (8th Cir. 2010) (quoting *Brown v. Barnhart*, 390 F.3d 535 (8th Cir. 2004)). Here, the records indicate that additional treatment and medication aided Osborne in returning to a normal mental state after she experienced the depressive episode that began in July 2010. Osborne even admits that her medications were adjusted during the 2010 episode and that she didn't experience another episode until early 2014. Pl.'s Br. at 7. Thus, substantial evidence supports a finding that Osborne's condition may be controlled by proper medication and therefore she did not have an impairment that could be considered disabling.

As indicated above, the medical records dated after the relevant period are irrelevant to this Court's review. To be entitled to benefits, Osborne must be found disabled during the relevant period. Here, for the reasons previously stated, substantial evidence supports a finding

that she was not severely disabled between January 2010 and June 2012. That her mental state may have later become a severe impairment does not support an award of benefits. *Dunlap v. Harris*, 649 F.2d 637, 639 (8th Cir. 1981); *see also Ahlstrom v. Colvin*, No. 4:13CV478NCC, 2014 WL 4724800, at *10 (E.D. Mo. Sept. 23, 2014) ("A non-disabling condition which later develops into a disabling condition after the expiration of a claimant's insured status cannot be the basis for an award of Social Security disability benefits."). As such, neither the new evidence documenting Osborne's 2018 visits with Dr. Giuffra nor the 2014 and 2015 medical records that were before the ALJ factors into the Court's present review.

Osborne lastly argues that the ALJ did not address Dr. Giuffra's opinion and it should be properly evaluated on remand since the new evidence "further supports his opinion as a treating source." Pl.'s Br. at 8. Osborne claims the new evidence "substantiates Dr. Giuffra's [2018] letter," Pl.'s Br. at 8, in which he states he treated her for bipolar disorder since 2003 and that she was "disabled" and "unable to work" because of her "numerous episodes of mania with psychosis and depression." Tr. 554. "Generally, [a] treating physician's opinion is due controlling weight if that opinion . . . is not inconsistent with the other substantial evidence in the record." *Wildman*, 596 F.3d at 964 (quoting *Brown*, 390 F.3d at 540).  The ALJ addressed Dr. Giuffra's letter and discounted it because it was inconsistent with the available medical records "show[ing] normal mental status examinations during the relevant period." Tr. 69.

Even with the new evidence, Dr. Giuffra's opinion remains inconsistent with substantial evidence in the record. As laid out above, the records show that while Osborne's mental state suffered between 2003 to 2005 and then again briefly between July and September 2010, she otherwise had a normal mental state between 2003 and 2013. The records simply do not substantiate Dr. Giuffra's statements that "she may have some moments of wellness" and that

9

"there are too many episodes over the years to support" that Ms. Osborne is unable to work. Tr. 554. Additionally, to the extent the records after the relevant period support his opinion, the ALJ properly discounted them in accordance with the reasons stated above because they did not "detail[] treatment from January 2010 to June 2012." Tr. 69. Finally, Dr. Giuffra's statements that Osborne was "disabled" and "unable to work" are not medical opinions, but rather conclusory opinions reserved for the Commissioner. *Despain v. Berryhill*, 926 F.3d 1024, 1027 (8th Cir. 2019). In sum, Dr. Giuffra's opinion remains inconsistent with substantial evidence on the record and the ALJ properly discounted it.

Regardless of whether the new evidence submitted to the Appeals Council may support a contrary outcome, it does not require this Court to remand. Rather, the Court assesses whether substantial evidence supports the ALJ's decision, which means evidence exists that "a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). For the reasons stated above, the record contains evidence that a reasonable mind reviewing the record might accept as adequate to support a finding that Osborne did not have a severe impairment. Therefore, substantial evidence supports the ALJ's finding that Osborne was not severely impaired and therefore not disabled.  As such, the Court must affirm the ALJ's decision.

Accordingly, the Court affirms the decision of the Commission and dismisses Plaintiff Lynn Osborne's Complaint with prejudice.

So Ordered this 30th day of September, 2020.

_SL R. CR_

**STEPHEN R. CLARK
UNITED STATES DISTRICT JUDGE**